509 A.2d 434

Anna Formicola, Widow, Philip Formicola, Deceased, Petitioner *v.* Workmen's Compensation Appeal Board (City of Philadelphia), Respondent.

Argued December 9, 1985, before Judges DOYLE. and COLINS, and Senior Judge BLATT, sitting as a panel of three.

*Christina J. Barbieri*, with her, *Carl M. Mazzocone, Kates, Livesey & Mazzocone*, for petitioner.

*Carol A. Mickey*, with her, *Barbara W. Mather*, City Solicitor, *Lilton R. Taliaferro, Jr.*, Assistant City Solicitor, *Michael Eiss* and *Herbert Bernstein*, for respondents.

OPINION BY JUDGE DOYLE, May 15, 1986:

Anna Formicola (Claimant) appeals from a decision of the Workmen's Compensation Appeal Board (Board), which affirmed a referee's denial of her fatal claim petition on the basis of Section 301(c)(1) of The Pennsylvania Workmen's Compensation Act (Act),[1] 77 P.S. §411(1).

Claimant is the widow of Philip Formicola (Decedent), who was employed as an officer of the Philadelphia Police Department between the years 1943 and 1957. On December 4, 1957, Decedent suffered chest pain while making an arrest, and on December 6, 1957, he was hospitalized with a myocardial infarction. Decedent received workmen's compensation benefits for total disability from December 4, 1957 until his death on March 14, 1980.[2] Following termination of Decedent's benefits, Claimant filed a fatal claim petition pursuant to the Act. Hearings were held before a referee on December 9, 1981, March 2, 1982, June 3, 1982, July 7, 1982 and October 13, 1982. On January 18, 1983, the referee issued a decision denying Claimant's petition on the basis that more than 300 weeks had elapsed between the date of the allegedly fatal injury and the date of death. This decision was affirmed by the Board on September 15, 1983.

Before both the referee and the Board, Claimant argued that the 1957 myocardial infarction was the cause of Decedent's death in 1980, and that the automatic 300 week limitation in Section 301(c)(1) of the Act resulted

---

[1] Act of June 2, 1915, P.L. 736, *as amended*. Section 301(c)(1) provides, in pertinent part:

> [W]herever death is mentioned as a cause for compensation under this act, it shall mean only death resulting from ... injury and its resultant effects, and occurring within three hundred weeks after the injury.

[2] The referee's findings of fact indicate that Claimant actually received an overpayment in the amount of $4,459.16, as she continued to receive and endorse checks until September 19, 1981.

in a denial of due process and equal protection of the law under the fourteenth amendment to the United States Constitution. As administrative tribunals, the referee and the Board declined to address Claimant's constitutional arguments and instead simply denied her petition on the basis of Section 301(c)(1). In addition, the referee implied in his findings of fact that death may have been due to Decedent's long-term alcohol abuse rather than his 1957 injury. The referee did not reach a definite conclusion on this issue, apparently because it would not have altered the result of his decision. Before this Court, Claimant renews her constitutional arguments and requests that if we do find in her favor, we remand the case for a determination on the issue of causation.

Claimant's first argument is that Section 301(c)(1) of the Act operates to deny due process of law to the dependents of certain injured employees by imposing an arbitrary and unreasonable cut-off on the eligibility for death benefits at 300 weeks after the occurrence of a work-related injury, thus resulting in an irreversible and irrebutable presumption that the death of an employee more than 300 weeks following a work-related injury is not the result of that injury. Claimant contends that the only possible rationale for this limitation is administrative efficiency, which, she argues, does not justify the deprivation of property without due process.[3]

---

[3] Claimant cites a Colorado case, *Stevenson v. Industrial Commission*, 190 Colo. 234, 545 P.2d 712 (1976), for this proposition. She also relies heavily upon *Stevenson* as a parallel to the case at bar. Aside from being obviously uncontrolling, we find *Stevenson* to be factually inapposite.

In finding unconstitutional a five year exposure requirement for eligibility for compensation due to silicosis disability, the *Stevenson* court stated that "the length of harmful exposure has little value as a criterion for definitely establishing a causal connection between

A party seeking to invalidate a state statute on due process grounds has the burden of demonstrating the lack of a rational connection between the challenged provision and some legitimate state purpose. *Kelley v. Johnson*, 425 U.S. 238 (1976). The stated and undisputed social purpose of the Pennsylvania Workmen's Compensation Act is to strike a balance between the interests of employees and the interests of employers.[4] Thus, the constitutional inquiry before us is not whether a more effective measure might be devised, but whether the challenged measure promotes the stated purpose in any degree whatsoever. *Jefferson v. Hackney*, 406 U.S. 535 (1972). In this connection, a limitation which preserves the workmen's compensation fund for those claimants who are most clearly entitled to compensation will be upheld as not infringing upon due process rights. *See Guess v. Workmen's Compensation Appeal Board (Link Belt/F.M.C. Corp.)*, 77 Pa. Commonwealth Ct. 319, 466 A.2d 1098 (1983) (upholding the exclusion of benefits for partial disability from silicosis under The Pennsylvania Occupational Disease Act,[5] 77 P.S. §§1201-1603). It is readily apparent that this is the function of Section 301(c)(1).

As a general rule, where death occurs within a reasonable time following an injury, the causal connection between the injury and the death can be proved or disproved with a greater degree of certainty than where an extensive lapse of time has attenuated the proof. Also as

the employment-related exposure and the disease." *Id*. at , 545 P.2d at 715-16. This logic can only support the Pennsylvania system of allowing extra time for claims based on occupational disease, including coal-miner's silicosis, as opposed to claims based on work-related non-disease injury.

[4] *See Foreward to Title 77 of Purdon's Pennsylvania Statutes Annotated,* prepared by Leo G. Knoll, Chairman of the Workmen's Compensation Board of Pennsylvania.

[5] Act of June 21, 1939, P.L. 566, *as amended.*

a general rule, the causal connection itself will weaken as time increases the likelihood of intervening causes. The legislature has set the term of 300 weeks (or approximately five years and nine months) as a reasonable time period. We cannot say that such a term is unreasonable, and therefore, we do not find any due process violation in the operation of Section 301(c)(1).

Claimant's second argument is that Section 301(c)(1) of the Act is unconstitutional by virtue of Section 301(c)(2),[6] which permits dependents of employees who die of an occupational disease a more or less indefinite period of time to file a fatal claim petition. Claimant's theory is that the privilege afforded these dependents denies equal protection of the law to those dependents of employees who sustain a work-related injury and die of such injury more than 300 weeks after it is sustained. Claimant acknowledges that Section 301(c)(1) does not involve a fundamental right or a suspect class. To meet constitutional standards, therefore, the classification need only bear a reasonable relationship to a legitimate state objective. *Frontiero v. Richardson,* 411 U.S. 677 (1973). As indicated above, the indisputedly legitimate objective of the Workmen's Compensation Act is to protect the interests of employers and employees. Claimant asserts that the distinction which has been

---

[6] Section 301(c)(2) of the Act, 77 P.S. §411(2), provides, in pertinent part:

[W]henever occupational disease is the basis for compensation, for disability or death under this act, it shall apply only to disability or death resulting from such disease and occurring within three hundred weeks after the last date of employment in an occupation or industry to which [the employee] was exposed to hazards of such disease: And provided further, That if the employe's compensable disability has occurred within such period, his subsequent death as a result of the disease shall likewise be compensable.

drawn between the two classes of dependents is wholly arbitrary and bears no reasonable relationship to this purpose. More specifically, Claimant alleges that an invalid distinction has been drawn between a heart condition suffered by a policeman, which is compensable only as an injury under the Act, and a heart condition suffered by a fireman, which is compensable either as an injury *or* as a specific occupational disease under the provision of Section 108(o) of the Act,[7] 77 P.S. §27.1(o). The result, Claimant argues, is that the widow of a fireman who suffers a heart-attack on the job from which he subsequently dies will have a compensable dependent's claim no matter how long the time period between the onset of disability and the related death, while the widow of a policeman who suffers a heart attack on the job will receive no dependent's benefits unless her husband dies within 300 weeks of the work-related heart attack.

Claimant's argument misses the point. It is not a matter of placing limitations on the dependents of employees who are injured other than by an occupational disease while placing no limitations on the dependents of employees who do suffer from such a disease. It is rather a matter of defining the limitations differently due to the different natures of a non-occupational disease type of injury and an occupational disease type of injury. The occupational diseases, which are enumerated under Section 108 of the Act and compensable through Section 301(c)(2), include only those diseases which already have been scientifically proven to result especially from employment in particular occupations and those which can be proven to so result. Most of these diseases also have been proven to result only from the day by day exposure to unhealthful conditions over

---

[7] Added by the Act of October 17, 1972, P.L. 930, *as amended*.

an extended period of time. *See Robachinski v. Workmen's Compensation Appeal Board,* 33 Pa. Commonwealth Ct. 89, 380 A.2d 952 (1977). Thus, the effects of an occupational disease tend to be insidious, and may manifest themselves months or years after the causative exposure. Death from such a disease rarely occurs within a short period of time and commonly occurs after many years. Thus the employee, or a dependent of the employee, who is stricken with such a disease is given an extended period of time both to make an original disability claim and to make a fatal claim on the basis of such disability.[8] To be permitted this greater protection, however, a claimant must prove the existence of one of the specifically enumerated diseases, or alternatively, the existence of a disease to which the employee has been exposed by reason of his employment, which is causally related to the employee's particular industry or occupation, and which has a substantially greater incidence in that industry or occupation than in the general population. *See* Section 108(n) of the Act, 77 P.S. §27.1(n).

As for Claimant's policeman/fireman example, the occupational disease listing does specifically include:

(o) Diseases of the heart and lungs, resulting in either temporary or permanent total or partial disability or death, after four years or more of service in fire fighting for the benefit or safety of the public, caused by extreme over-exertion in

---

[8] A stricter limitation governs a disability or death claim which is brought under The Pennsylvania Occupational Disease Act. Section 301(c) of that Act, 77 P.S. §1401(c), currently permits compensation only where disability or death resulting from an occupational disease occurs within four years after the date of a claimant's last employment in an occupation or industry to which the occupational disease is peculiar. *See Kilvady v. United States Steel Corporation,* 90 Pa. Commonwealth Ct. 586, 496 A.2d 116 (1985).

times of stress or danger or by exposure to heat, smoke, fumes or gasses, arising directly out of the employment of any such firemen.

Claimant is apparently arguing that a policeman, like a fireman, is also engaged in work which is performed for the benefit and safety of the public and which may result in extreme over-exertion in times of stress. Relying on the standard cited in *McCoy v. State Board of Medical Education and Licensure,* 37 Pa. Commonwealth Ct. 530, 537, 391 A.2d 723, 726 (1978), Claimant argues that by including certain instances of heart disease to firemen within the category of occupational disease and not similarly including such instances of heart disease to policemen, the legislature has created a disparity of treatment between classes of individuals whose situations are arguably indistinguishable.

We are constrained to disagree. The distinction is not between the dependents of firemen versus the dependents of policemen; it is between occupational diseases and work-related injuries. Having established this distinction on a reasonable basis, as discussed above, the legislature was free to assign to the category of occupational disease any disease which, on the basis of facts available to them, satisfied the applicable criteria. Claimant was free to argue that Decedent's heart injury qualified as an occupational disease under the catch-all provision of Section 27.1(n). In that context the analogy between policemen and firemen might have been appropriate. She did not do so, however, and she cannot now make up for this lack by attacking the constitutionality of the Act.

In sum, we conclude that Section 301(c)(1) of the Act does not violate either due process or equal protection. This conclusion makes it unnecessary for us to consider Claimant's arguments on the issue of causation. We will affirm the Board.

ORDER

Now, May 15, 1986, the decision of the Workmen's Compensation Appeal Board dated September 15, 1983, No. A-85386, is hereby affirmed.

Judge COLINS dissents.